# EXHIBIT A

## ESCROW AGREEMENT

This Escrow Agreement (the "Escrow Agreement") is made as of March 14, 2011, by and among Ascendere, Inc, a New Jersey corporation ("Seller"), Bright Horizons Children's Centers LLC, a Delaware limited liability company ("Buyer", and together with Seller, sometimes referred to individually as a "Party" or collectively as the "Parties"), and JPMorgan Chase, NA as escrow agent (the "Escrow Agent"), with regard to a portion of the purchase price for the Assets of Seller and its affiliates, the sale of which is being closed on the date hereof, pursuant to that certain Asset Purchase Agreement dated as of the date hereof (the "Purchase Agreement") by and among Buyer, Seller and certain other parties thereto.

WHEREAS, the Closing of the transactions contemplated by the Purchase Agreement is taking place as of the date hereof; and

WHEREAS, the cash consideration paid to Seller pursuant to Section 1.5 of the Purchase Agreement is reduced by the sum of One Million Dollars ($1,000,000), which sum is to be held by the Escrow Agent in accordance with the terms hereof;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Purchase Agreement, and intending to be legally bound, the parties hereto do hereby agree as follows:

**1. APPOINTMENT.** The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

**2. ESCROW FUND.** The amount of One Million Dollars ($1,000,000) (the "Escrow Fund") will be deposited with the Escrow Agent (the "Escrow Deposit") as part of the purchase price for the Assets and will be held by the Escrow Agent in accordance with the terms hereof. The Escrow Agent shall hold the Escrow Deposit and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "Fund") as directed in Section 2(b).

    **a.** The Escrow Agent shall hold, safeguard and dispose of the Escrow Deposit in accordance with the terms hereof, and shall treat such Escrow Deposit in accordance with the terms hereof and not as the property of Buyer or Seller.

    **b.** During the term of this Escrow Agreement, the Fund shall be invested in a non-interest bearing FDIC insured cash account, unless otherwise instructed by the Parties and as shall be acceptable to the Escrow Agent. Instructions to make any other investment ("Alternative Investment") must be in a writing signed by the Parties and shall specify the type and identity of the investments to be purchased and/or sold. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Escrow Agent or any of its affiliates may receive compensation with respect to any Alternative Investment directed hereunder including without limitation charging any applicable agency fee in connection with each transaction. The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Fund or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall not have any liability for any loss sustained as a result of any investment in an investment made pursuant to the terms of this Escrow Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the Parties to give the Escrow Agent instructions to invest or reinvest the Fund. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.

c. The Escrow Agent shall send the Parties a monthly statement showing the balance of, and any posted interest earned on, the Fund.

d. Notwithstanding the foregoing, nothing contained herein shall require the Escrow Agent to maintain a separate bank account solely for the Escrow Deposit.

3. **DISTRIBUTIONS.**

a. **Purchase Price Decrease.** If the determination of the "Final Balance Sheet" pursuant to Section 1.6 of the Purchase Agreement results in a decrease in the Purchase Price, Buyer may provide Seller and Escrow Agent no later than eleven (11) Business Days prior to the Termination Date (as hereafter defined) with a written request substantially in the form of Exhibit A for release of said amount to Buyer from Escrow. Seller will be given ten (10) Business Days from its receipt of such notice to immediately pay the decrease directly to Buyer and furnish Buyer and Escrow Agent with evidence of such payment. In the absence of such payment, the Escrow Agent shall promptly on or after the 11th Business Day deduct such amount from the Fund and distribute the same to the Buyer.

b. **Indemnification.**

(i) In the event Buyer intends to make a claim against the Escrow Fund to satisfy any Loss(es) that any of the Buyer Indemnitees has under Article 7 of the Purchase Agreement, Buyer shall no later than one (1) Business Day prior to the Termination Date (as hereafter defined) deliver written notice substantially in the form of Exhibit B to Seller and to the Escrow Agent in the manner set forth in Section 9 of this Escrow Agreement (a "Claim"). The Buyer may make more than one Claim with respect to any underlying matter or state of facts. The Escrow Agent shall not be required to have knowledge of nor inquire into or consider whether a Claim complies with the requirements of the Purchase Agreement.

(ii) If Seller shall dispute any matter in, or relating to, a Claim, Seller shall give written notice of response to such Claim to Buyer and the Escrow Agent within thirty (30) days after the date the Claim is received by Seller and the Escrow Agent (a "Response Notice"), and Escrow Agent will not be required to confirm receipt by Seller of such Claim. If no such Response Notice shall be so sent within such period, Seller shall be deemed to agree irrevocably with, and acknowledge irrevocably the correctness of, such Claim for the full amount thereof and Escrow Agent shall promptly on or after the 31st day distribute said funds from the Fund to Buyer.

(iii) If Seller deliver(s) to the Escrow Agent a timely Response Notice, then:

(A) An officer of each of Seller and Buyer shall meet as promptly as practicable to attempt to resolve the dispute. If Seller and Buyer are able to resolve the dispute, both of them will deliver to the Escrow Agent within three (3) business days of such a resolution a joint written instruction certificate signed on behalf of each of Buyer and Seller identified as a "Buyer and Seller Certificate" given to the Escrow Agent pursuant to Section 3(b)(iii)(A) of this Escrow Agreement, specifying the terms of their resolution and directing the Escrow Agent to disburse the disputed funds as set forth therein. If Seller and Buyer are unable to resolve the dispute within twenty (20) days after Seller delivers to the Escrow Agent a Response Notice, then such dispute shall be resolved in accordance with the terms of the Escrow Agreement; and

(B) To the extent not already paid to Buyer in connection with other Claims or as otherwise provided in this Escrow Agreement, the Escrow Agent shall reserve a portion of the Escrow Fund equal to the dollar amount of the Losses that are specified in the Claim and disputed in the

Response Notice and shall continue to hold and reserve such portion of the Escrow Fund until the Escrow Agent receives:

(1) a joint written instruction certificate signed on behalf of each of Buyer and Seller, identified as a "Buyer and Seller Certificate", is given to the Escrow Agent pursuant to Section 3(b)(iii)(A) of this Escrow Agreement, or

(2) a final unappealable order from a court of competent jurisdiction delivered by the prevailing party along with a letter certifying that the order is final and unappealable, or

(3) the order of an arbitrator after binding arbitration between Buyer and Seller delivered by the prevailing party along with a letter certifying that the binding arbitration is final and unappealable,

in any such case directing the disposition of such reserved portion of the Fund.

Buyer and Seller agree that after receipt by the Escrow Agent of a Claim described in clause (b)(i) and upon expiration of the time frame described in (b)(ii) during which no Response Notice is given or upon receipt by the Escrow Agent of a Buyer and Seller Certificate specified in Section 3(b)(iii)(A) above, the disputed claim for Losses shall be treated as an undisputed claim and the Escrow Agent shall deliver or otherwise handle the reserved Fund in accordance with the directions set forth therein.

c.  Claims pursuant to this Escrow Agreement may be made contemporaneous with or anytime after such Claims are made pursuant to the Purchase Agreement and any delay in filing a Claim hereunder will not operate to prejudice the parties' rights under this Escrow Agreement.

4.  **TERMINATION OF ESCROW FUND**

a.  Subject to Section 5 of this Escrow Agreement, on the Termination Date (as defined below), any amounts remaining in the Fund, if any, less any previously sent and pending or unresolved Purchase Price Decrease request or Claims, shall be promptly disbursed by the Escrow Agent to Seller. Unless otherwise notified in writing, the Escrow Agent need not obtain authorization or approval of Buyer to make such distribution.

b.  The foregoing notwithstanding, this Escrow Agreement can be canceled and the entire Fund distributed prior to the Termination Date with the mutual joint written instruction of both Seller and Buyer with delivery thereof to the Escrow Agent.

5.  **ESCROW PERIOD.** The Escrow Fund shall remain in existence until December 12, 2011 (the "Termination Date"), with any remaining balance of the Fund, to the extent available less any previously sent and pending or unresolved Purchase Price Decrease requests or Claims received one (1) Business Day prior to the Termination Date, to be released to the Seller. If it is determined that Buyer is entitled to recovery on account of such Purchase Price Decrease request or Claim, the Escrow Agent shall deliver or cause to be delivered to Buyer the amount due and payable with respect thereto. The remainder of the Fund, if any, following any delivery to Buyer in accordance with this Section 5, shall be delivered to Seller pursuant to this Escrow Agreement. Any portion of the Fund delivered to Seller pursuant to this Section 5 shall be delivered to Seller as specified in written instructions from Seller.

6. **THE ESCROW AGENT'S RIGHTS AND RESPONSIBILITIES.** To induce the Escrow Agent to act hereunder, it is further agreed that:

    a. The Escrow Agent shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Purchase Agreement (the "Underlying Agreement"), nor shall the Escrow Agent be required to determine if any person or entity has complied with any Underlying Agreement, nor shall any additional obligations of the Escrow Agent be inferred from the terms of any Underlying Agreements, even though reference thereto may be made in this Escrow Agreement. In the event of any conflict between the terms and provisions of this Escrow Agreement, those of any Underlying Agreement, any schedule or exhibit attached to the Purchase Agreement, or any other agreement among the Parties, the terms and conditions of this Escrow Agreement shall control. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper Party or Parties without inquiry and without requiring substantiating evidence of any kind. The Escrow Agent shall not be liable to any Party, any beneficiary or other person for refraining from acting upon any instruction setting forth, claiming, containing, objecting to, or related to the transfer or distribution of the Fund, or any portion thereof, unless such instruction shall have been delivered to the Escrow Agent in accordance with Section 9 below and the Escrow Agent has been able to satisfy any applicable security procedures as may be required thereunder. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Escrow Agent shall have no duty to solicit any payments which may be due it or the Fund, including, without limitation, the Escrow Deposit nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder.

    b. The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to either Party. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents. The Escrow Agent may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any Party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be given a direction in writing by the Parties which eliminates such ambiguity or uncertainty to the satisfaction of Escrow Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction. The Parties agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. The Escrow Agent shall not be liable in any respect on account of the identity, authority or rights of the parties executing or delivering or purporting to execute or deliver this Escrow Agreement or any documents or papers deposited or called for hereunder.

        **c.**    In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby expressly authorized in its sole discretion to comply with and obey orders, judgments or decrees of any court, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction. In case the Escrow Agent obeys or complies with any such order, judgment or decree of any court, the Escrow Agent shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being subsequently reversed, modified, annulled, set aside, vacated or found to have been entered without jurisdiction.

        **d.**    This Escrow Agreement sets forth the exclusive duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations of the Escrow Agent shall be read into this Escrow Agreement.

        **e.**    **Indemnity.**

            **(i)**    The Parties shall jointly and severally indemnify, defend and hold harmless the Escrow Agent and its affiliates and their respective successors, assigns, directors, agents and employees (the "Indemnitees") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, reasonable costs or expenses (including, without limitation, the reasonable fees and expenses of outside counsel and experts and their staffs and all expense of document location, duplication and shipment) (collectively "Damages") arising out of or in connection with (i) the Escrow Agent's execution and performance of this Escrow Agreement, tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Escrow Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except in the case of any Indemnitee to the extent that such Damages are finally adjudicated by a court of competent jurisdiction to have been primarily caused by the gross negligence or willful misconduct of such Indemnitee, or (ii) its following any instructions or directions, whether joint or singular, from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. The indemnity obligations set forth in this Section 6(e)(i) shall survive the resignation, replacement or removal of the Escrow Agent or the termination of this Escrow Agreement.

            **(ii)**    The Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Fund for the payment of any claim for indemnification, fees, expenses and amounts due to the Escrow Agent or an Indemnitee. In furtherance of the foregoing, the Escrow Agent is expressly authorized and directed, but shall not be obligated, to charge against and withdraw from the Fund for its own account or for the account of an Indemnitee any amounts due to the Escrow Agent or to an Indemnitee under either Sections 6(e)(i), 7 or 11 of this Escrow Agreement. In the event that the Escrow Agent should at any time be confronted with inconsistent claims or demands by the parties hereto, the Escrow Agent shall have the right to interplead said parties in any court of competent jurisdiction and request that such court determine such respective rights of the parties with respect to this Escrow Agreement, and upon doing so, the Escrow Agent shall be released from any obligations or liability as a consequence of any such claims or demands.

      **7.**    **COMPENSATION AND REIMBURSEMENT.** Seller and Buyer agree jointly and severally (a) to pay the Escrow Agent upon execution of this Escrow Agreement and from time to time all reasonable expenses of the Escrow Agent incurred in the administration of the Fund, along with any fees or charges for accounts, including those levied by any governmental authority which the Escrow Agent may impose, charge or pass-through, which unless otherwise agreed in writing shall be as described in <u>Exhibit C</u>

attached hereto, and (b) to pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the performance, modification and termination of this Escrow Agreement. If Seller's share of the expenses are not paid to Buyer prior to the disbursement of the Escrow Fund, such expenses may be deducted from the Escrow Fund and paid to Buyer. The obligations contained in this Section 7 shall survive the termination of this Escrow Agreement and the resignation, replacement or removal of the Escrow Agent.

8. **RESIGNATION OF ESCROW AGENT.**

   a. The Escrow Agent or any successor may resign as escrow agent hereunder by giving thirty 30 days written notice specifying the date thereof to Seller. Such resignation shall become effective following such written notice upon the earlier of the appointment by Seller and Buyer of a successor escrow agent that accepts the appointment and agrees to be bound by the provisions of this Escrow Agreement or the expiration of thirty (30) days thereafter. If the Seller and Buyer have failed to appoint a successor escrow agent prior to the expiration of thirty (30) days following receipt of the notice of resignation, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto. Escrow Agent's sole responsibility after such thirty (30) day notice period expires shall be to hold the Fund (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate, subject to the provisions of Section 6(e)(ii). In accordance with Section 6(e)(ii), the Escrow Agent shall have the right to withhold an amount equal to any amount due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of the Escrow Agreement.

   b. Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

9. **NOTICES.** All communications hereunder shall be in writing and except for communications from the Parties setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to funds transfer instructions (all of which shall be specifically governed by Section 10 below), shall be deemed to be duly given after it has been received and the receiving party has had a reasonable time to act upon such communication if it is sent or served:

   (a) by facsimile (if to the Escrow Agent);

   (b) by overnight courier (if to the Parties or the Escrow Agent); or

   (c) by prepaid registered mail, return receipt requested (if to the Parties or the Escrow Agent);

to the appropriate notice address set forth below or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested:

To Buyer :

Stephen Dreier
Bright Horizons Children's Centers LLC
200 Talcott Avenue South
Watertown, MA 02472

with a copy to:

Derek S. Hughey
Hughey Business Law
2801 Oakland Avenue
Nashville, TN 37212

To Seller:

Harsh Chadha
Ascendere, Inc.
P.O. Box 6366
Lawrenceville, NJ 08648

with a copy to:

Mark D. Shapiro
Hyland Levin LLP
6000 Sagamore Drive, Suite 6301
Marlton, NJ 08053

To the Escrow Agent:

JPMorgan Chase Bank N.A.
Escrow Services
4 New York Plaza, 21st Floor
New York, NY 10004
Attn: Chris Palermo / Donna Fitzsimmons
Fax: 212-623-6168 or 6380

Notwithstanding the above, in the case of communications delivered to the Escrow Agent, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate. For purposes of this Escrow Agreement, "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed.

10. **SECURITY PROCEDURES.** Notwithstanding anything to the contrary as set forth in Section 9, any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer

or distribution of funds, including but not limited to any such funds transfer instructions that may otherwise be set forth in a written instruction permitted pursuant to Section 3 or 4 of this Escrow Agreement, may be given to the Escrow Agent only by confirmed facsimile and no instruction for or related to the transfer or distribution of the Fund, or any portion thereof, shall be deemed delivered and effective unless the Escrow Agent actually shall have received such instruction by facsimile at the number provided to the Parties by the Escrow Agent in accordance with Section 9 and as further evidenced by a confirmed transmittal to that number.

  **a.** In the event funds transfer instructions are so received by the Escrow Agent by facsimile, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule 1 hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized representatives identified in Schedule 1, the Escrow Agent is hereby authorized both to receive written instructions from and seek confirmation of such instructions by telephone call-back to any one or more of Seller or Buyer's executive officers ("Executive Officers"), as the case may be, which shall include the titles of Chief Administrative Officer or President, as the Escrow Agent may select. Such "Executive Officer" shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Seller or Buyer to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Escrow Agent may apply any of the Fund for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated.

  **b.** Seller acknowledges that the Escrow Agent is authorized to use the following funds transfer instructions to disburse any funds due to Seller under this Escrow Agreement without a verifying call-back as set forth in Section 10(a) above:

    Seller's Bank account information:

    Citibank N.A., New York
    111 Wall Street
    New York, NY 10005

    ABA: 021000089
    Account Name: Charles Schwab & Co., Inc.
    Account No. 4055-3953
    For Further Credit to:
    Account Name: Harsh & Sonia Chadha
    Account No. 4057-4802

  **c.** In addition to their respective funds transfer instructions as set forth in Section 10(b) above, Seller acknowledges that repetitive funds transfer instructions may be given to the Escrow Agent for one or more beneficiaries where only the date of the requested transfer, the amount of funds to be transferred, and/or the description of the payment shall change within the repetitive instructions ("Standing Settlement Instructions"). Accordingly, Seller shall deliver to Escrow Agent such specific Standing Settlement Instructions only for each respective beneficiary as set forth in Schedule 1, by facsimile in accordance with this Section 10. Escrow Agent may rely solely upon such Standing Settlement Instructions and all identifying

information set forth therein for each beneficiary. Escrow Agent and Seller agree that such Standing Settlement Instructions shall be effective as the funds transfer instructions of Seller, without requiring a verifying callback, whether or not authorized, if such Standing Settlement Instructions are consistent with previously authenticated Standing Settlement Instructions for that beneficiary.

    d.    The Parties acknowledge that the security procedures set forth in this Section 10 are commercially reasonable.

    **11.**    **OWNERSHIP FOR TAX PURPOSES.** The other parties hereto have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation. All interest or other income earned under this Escrow Agreement shall be allocated to Seller and reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Deposit by Seller whether or not said income has been distributed during such year. Escrow Agent shall withhold any taxes it deems appropriate in the absence of proper tax documentation or as required by law, and shall remit such taxes to the appropriate authorities. The Parties hereby represent to the Escrow Agent that (i) there is no sale or transfer of an United States Real Property Interest as defined under IRC Section 897(c) in the underlying transaction giving rise to this Escrow Agreement; and (ii) such underlying transaction does not constitute an installment sale requiring tax reporting or withholding of imputed interest or original issue discount to the IRS or other taxing authority.

    **12.**    **SUCCESSORS AND ASSIGNS.** Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any Party, except as provided in Section 8, without the prior consent of the Escrow Agent and other Parties.

    **13.**    **PATRIOT ACT DISCLOSURE.** Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, the other parties hereto acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the other parties hereto identity including without limitation name, address and organizational documents ("identifying information"). The other parties hereto agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

    **14.**    **GOVERNING LAW.** This Escrow Agreement shall be governed by and interpreted in accordance with the laws of the State of New Jersey without giving effect to its conflicts of laws provisions. Each Party and the Escrow Agent irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New Jersey. To the extent that in any jurisdiction either Party may now or hereafter be entitled to claim for itself or its assets, immunity from suit, execution attachment (before or after judgment), or other legal process, such Party shall not claim, and it hereby irrevocably waives, such immunity.

    **15.**    **MISCELLANEOUS.** Except for changes to funds transfer instructions as provided in Section 10, the provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent and the Parties. The Escrow Agent and the Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding

arising or relating to this Escrow Agreement. No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control. All signatures of the parties to this Escrow Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party. If any provision of this Escrow Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction. A person who is not a party to this Escrow Agreement shall have no right to enforce any term of this Escrow Agreement. The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to Escrow Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Escrow Agreement shall be enforced as written. Except as expressly provided in Section 6(e) above, nothing in this Escrow Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent and the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Escrow Agreement or any funds escrowed hereunder.

      16.    **COUNTERPARTS.** This Escrow Agreement may be executed in any number of counterparts, each of which when so executed shall constitute an original hereof, but all of which together shall constitute one agreement.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the day and year first above written.

BRIGHT HORIZONS CHILDREN'S CENTERS LLC
Buyer

By: _____
Name: Stephen Dreier
Title: Secretary, CAO and Vice President

ASCENDERE, INC.
Seller

By: _____
Name: Harsh Chadha
Title: President

JPMORGAN CHASE BANK, N.A.
ESCROW AGENT:

By: _____
Name: Christopher Palermo
Title: Assistant Vice President

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the day and year first above written.

BRIGHT HORIZONS CHILDREN'S CENTERS LLC
Buyer

By:_____
    Name: Stephen Dreier
    Title: Secretary, CAO and Vice President

ASCENDERE, INC.
Seller

By:_____
    Name: Harsh Chadha
    Title: President

JPMORGAN CHASE BANK, N.A.
ESCROW AGENT:

By:_____
    Name: Christopher Palermo
    Title: Assistant Vice President

**Exhibit A**

VIA FACSIMILE
JPMorgan Chase Bank, N.A.
Escrow Services
4 New York Plaza, 21st Floor
New York, NY 10004
Attention: Chris Palermo/Donna Fitzsimmons
Facsimile: 212-623-6168


BY OVERNIGHT MAIL


[Date]


Re: ESCROW AGREEMENT, dated _____, 2011, by and among Ascendere, Inc, a New Jersey corporation ("Seller"), Bright Horizons Children's Centers LLC, a Delaware limited liability company ("Buyer"), and JPMorgan Chase, NA as escrow agent ("Escrow Agent")


Dear Escrow Agent & Seller:

Pursuant to Section 3(a) of the above referenced agreement, Buyer hereby directs the Escrow Agent to wire $_____ from the Fund to the wire instructions of [chose one: Buyer or Seller] in Section 10 or as follows:


Sincerely Yours,


Bright Horizons Children's Centers LLC, as Buyer

By:_____
Name:_____
Title: _____

<u>Exhibit B</u>
"Claim Notice"

<u>VIA FACSIMILE</u>
JPMorgan Chase Bank, N.A.
Escrow Services
4 New York Plaza, 21st Floor
New York, NY 10004
Attention: Chris Palermo/Donna Fitzsimmons
Facsimile: 212-623-6168

<u>BY OVERNIGHT MAIL</u>
Harsh Chadha
Ascendere, Inc.
P.O. Box 6366
Lawrenceville, NJ 08648


[Date]


Re: ESCROW AGREEMENT, dated _____, 2011, by and among Ascendere, Inc, a New Jersey corporation ("Seller"), Bright Horizons Children's Centers LLC, a Delaware limited liability company ("Buyer"), and JPMorgan Chase, NA as escrow agent ("Escrow Agent")


Dear All:

Pursuant to Section 3(c) of the above referenced agreement, please find the attached Claim. Subject to no Response Notice from the Seller within 30 days, the Escrow Agent is hereby directed to wire $_____ from the Fund to the wire instructions of [chose one: Buyer or Seller] in Section 10 or as follows:


Sincerely Yours,


Bright Horizons Children's Centers LLC, as Buyer

By:_____
Name:_____
Title: _____

Exhibit C

# J.P.Morgan

## Schedule of Fees for Escrow Agent Services

Based upon our current understanding of your proposed transaction, our fee proposal is as follows:

**Account Acceptance Fee**.................................$ waived
Encompassing review, negotiation and execution of governing documentation, opening of the account, and completion of all due diligence documentation. Payable upon closing.

**Annual Administration Fee**.............................. $ 2,500.00
The Administration Fee covers our usual and customary ministerial duties, including record keeping, distributions, document compliance and such other duties and responsibilities expressly set forth in the governing documents for each transaction. Payable upon closing and annually in advance thereafter, without pro-ration for partial years.

**Extraordinary Services and Out-of Pocket Expenses**
Any additional services beyond our standard services as specified above, and all reasonable out-of-pocket expenses including attorney's or accountant's fees and expenses will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at the Bank's then standard rate. Disbursements, receipts, investments or tax reporting exceeding 25 items per year may be treated as extraordinary services thereby incurring additional charges. The Escrow Agent may impose, charge, pass-through and modify fees and/or charges for any account established and services provided by the Escrow Agent, including but not limited to, transaction, maintenance, balance-deficiency, and service fees and other charges, including those levied by any governmental authority.

**Disclosure & Assumptions**
- Please note that the fees quoted are based on a review of the transaction documents provided and an internal due diligence review. JPMorgan reserves the right to revise, modify, change and supplement the fees quoted herein if the assumptions underlying the activity in the account, level of balances, market volatility or conditions or other factors change from those used to set our fees.

- The escrow deposit shall be continuously invested in a JPMorgan Chase Bank money market deposit account ("MMDA") or a JPMorgan Chase Bank Cash Compensation account. MMDA and Cash Compensation Accounts have rates of compensation that may vary from time to time based upon market conditions. The Annual Administration Fee would include a supplemental charge up to 25 basis points on the escrow deposit amount if another investment option were to be chosen.

- The Parties acknowledge and agree that they are permitted by U.S. law to make up to six (6) pre-authorized withdrawals or telephonic transfers from an MMDA per calendar month or statement cycle or similar period. If the MMDA can be accessed by checks, drafts, bills of exchange, notes and other financial instruments ("Items"), then no more than three (3) of these six (6) transfers may be made by an Item. The Escrow Agent is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a money market deposit account.

- Payment of the invoice is due upon receipt.

**Compliance**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account. We may ask for information that will enable us to meet the requirements of the Act.

## SCHEDULE 1

### Telephone Number(s) and authorized signature(s) for
### Person(s) Designated to give Funds Transfer Instructions

If from Seller:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Harsh Chadha | 732-672-8037 | /s/ Harsh Chadha |
| 2. | Sonia Chadha | 732-672-8037 | |

If from Buyer:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Elizabeth J. Boland | 617-673-8125 | |
| 2. | James A. Plocica | 617-673-8041 | |
| 3. | Stephen I. Dreier | 617-673-8118 | |

### Telephone Number(s) for Call-Backs and
### Person(s) Designated to Confirm Funds Transfer Instructions

If from Seller:

| | Name | Telephone Number |
|---|---|---|
| 1. | Harsh Chadha | 732-672-8037 |
| 2. | Sonia Chadha | 732-672-8037 |

If from Buyer:

| | Name | Telephone Number |
|---|---|---|
| 1. | Elizabeth J. Boland | 617-673-8125 |
| 2. | James A. Plocica | 617-673-8041 |
| 3. | Stephen I. Dreier | 617-673-8118 |

SCHEDULE 1

Telephone Number(s) and authorized signature(s) for
Person(s) Designated to give Funds Transfer Instructions

If from Seller:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Harsh Chadha | 732-672-8037 | |
| 2. | Sonia Chadha | 732-672-8037 | |

If from Buyer:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Elizabeth J. Boland | 617-673-8125 | [signature] |
| 2. | James A. Plocica | 617-673-8041 | |
| 3. | Stephen I. Dreier | 617-673-8118 | |

Telephone Number(s) for Call-Backs and
Person(s) Designated to Confirm Funds Transfer Instructions

If from Seller:

| | Name | Telephone Number |
|---|---|---|
| 1. | Harsh Chadha | 732-672-8037 |
| 2. | Sonia Chadha | 732-672-8037 |

If from Buyer:

| | Name | Telephone Number |
|---|---|---|
| 1. | Elizabeth J. Boland | 617-673-8125 |
| 2. | James A. Plocica | 617-673-8041 |
| 3. | Stephen I. Dreier | 617-673-8118 |

Line Sheet for Standing Settlement Instructions
This Page Intentionally Not Completed

[Beneficiary's] Bank account information:    Bank name:
                                              Bank Address:
                                              ABA number:
                                              Account name:
                                              Account number:


All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer.

[Seller or Buyer] agrees that repetitive or standing settlement instructions will be effective as the funds transfer instructions of the stated beneficiary, whether or not authorized, if such settlement instructions are verified pursuant to the security procedure provided in the Agreement or such other security procedure to which Escrow Agent and [Seller or Buyer] may agree.

4840-8059-2648, v. 3